Here he is, here he is, this Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Robert B. Flannery is our judge. Please be seated. Your Honor, the court case on the docket this morning is 2-23-0195, commemorating the estate of John W. Fowler III, deceased, Elizabeth Fowler Petitioner-Appellant, the Sean McDonald Respondent-Appellee. Arguing on behalf of the Appellant, Mr. Steven J. Roeder. Arguing on behalf of the Appellee, Mr. Peter M. Swann. Thank you. Mr. Roeder, you may proceed. Thank you, Your Honor. May it please the Court, Counsel. My name is Steven Roeder, and with Ryan Wietendorf and Robert Black, I represent the Appellant, Elizabeth McDonald. This appeal presents several issues of first impression in Illinois. No court has passed on what constitutes a good faith belief that one is married in the context of the putative spouse statute or the putative spouse doctrine, especially when the reason that the putative spouse ultimately was determined not to be legally married is based on a statute no one had even suggested applied at the time of the marriage. No court has passed on who bears the burden of proof of establishing a lack of good faith, and no court in Illinois has adopted what we call a fact-of-the-case doctrine under which a trial court makes a determination of fact based on the factual record it says has been established by an opinion of the court of review, especially when the alleged facts were not presented in the trial court or even briefed to that court. The trial court below erred when without notice, without hearing argument, and without hearing evidence, it found as a fact that Elizabeth could not establish a good faith belief that she was married to John McDonald. It erred when it substituted its own definition of good faith and not the definition that putative spouse cases have applied. It erred when it ruled that Elizabeth had to file her putative spouse claim within two years after John's death and that she had to essentially prove she was John's legal spouse to establish her status as his putative spouse. As a result, this court should reverse and remand with instructions to the trial court to enter an order holding that Elizabeth is the putative spouse of John McDonald, declaring that she is John's sole heir, and allowing her objections to the order of distribution that John, excuse me, that Sean McDonald seeks to amend. Counsel? I'm sorry. In so doing, wouldn't we be doing what you complain about, which is, according to you, the trial court had an insufficient process? And I don't say you asked for an evidentiary hearing because, as I view the record, it looks like the parties submitted this to the court and invited it to rule in the briefs. Now, you did, it was asked, you know, we want oral argument, but I saw nowhere in the record that anybody said or suggested there needed to be an evidentiary hearing. And I don't see you saying it in your brief. Not directly. You do complain that the court, you asked for oral argument. The court didn't give it to you. I just, to hear you say we should enter a finding, we should reverse and enter a finding that she is the putative spouse. Okay, I can respond to that. It seems ill, at least inconsistent, with some of the things to which you have alluded. Well, let me explain the consistency from our point of view. We have a verified motion that established all the elements of the putative spouse statute. It was never contested. There was no verification of responding to it. Those are deemed admitted. We argued before the trial court. Those were admitted. If you wanted to contest any of those things, then there would be a suggestion that there should be an evidentiary hearing. But we walk into this and we argued repeatedly in our responses that this is deemed admitted. We have verification, verified allegations, well pleaded, but they've never contested. And so, and then with respect to an order directing that the trial court enter the finding, if it doesn't have a hearing, the basis for the court's alleged finding that we didn't, she did not have good faith was based upon advice purportedly regarding a legal impediment that nothing, no area in the record suggests was ever raised to her. And, in fact, this court, this court was the only court, and the dissenting opinion of Justice Tice, that actually parsed the statute involved. And if the argument is that she had a good, she did not have a good faith belief that she could be married because of 11A, 17A, 10, well, that can't be because this court has determined, and I think correctly, and I think Justice Tice correctly pointed out, that there's nothing in that statute, nothing that would direct anyone to believe that you had to get a good faith finding. And the other four justices, as Justice Tice pointed out. We are bound by the majority's decision. You are bound by the decision on the law. That's correct. I agree. And also, with respect to your argument, the court said, Elizabeth was aware at the time the marriage took place that as a result of the guardianship proceedings, Sean was under a plenary guardianship of Sean. And for that reason, the marriage might not be valid. Might not be valid. Right. Okay. And does that not trigger an investigation, at least, or to look into the validity of the marriage? Well, I think she testified as to what her understanding was. That's correct. But the validity of the investigation that Your Honor suggested she was obligated to pursue would not have led to the reason for which the Supreme Court and the trial court ultimately determined that the marriage was not valid. Nobody suggested 17A10 applied. Not until almost two years after John died. And there's nothing about that text that would have imparted that knowledge. And the concern here is not just for Eliza. One of the great things about Justice Tice's dissent is she pointed out the hardship on other people who haven't gone through this onerous process, who were guardians or lords and got married. We have a whole bunch of people, unknown number of people out there, who have gotten married, who may have had children after they went, as Justice Tice indicated, went through what they had every reason to believe was a valid marriage. And now they're stripped of their rights as a legal spouse. Was there ever the issue raised of collateral estoppel? That being that the proper way to approach the issue was to plead that you were the legitimate or your client was the legitimate spouse or, in the alternative, the putative spouse? That issue was never raised. I'm sorry, I wasn't finished. I'm sorry, Judge. And so if those were pled in the alternative, there would have been an adjudication on the merits of both issues. But why wouldn't it be collateral estoppel if you failed to raise the alternative theory in the first proceeding that if she isn't the legal spouse, she should be deemed the putative spouse? First, collateral estoppel requires two cases. I'm sorry, it applies to who? Collateral estoppel, I believe, applies to separate proceedings. This is the same proceeding. But either collateral estoppel or if it's a res judicata analysis also has to look at the fundamental fairness of applying that doctrine. Let's just – I agree with you that collateral estoppel has to have some sort of final judgment. So forget I asked the question. No, no, but I think it is a concern. And one of the things, though, even if that were to be considered, any application, we believe, of a collateral estoppel or res judicata also, this Court has held, has to be measured against an issue of fundamental fairness. It wasn't raised by Sean, but we had a situation. I didn't represent Ellis. She was pro se in the trial. Where the trial court, everybody agrees, an error prevented her from testifying. Everybody agrees the only difference in the Supreme Court is whether it was harmless error or not. But all ten justices, this Court and the other seven, all said there's no way she should have been prevented from testifying. But then the trial court even did one other thing. He said, I'm not even going to listen to your argument. Judge Murphy below said, I'm hoping, it's in the record, that your argument I consider to be violating the order in limiting. So if you're going to apply this judgment when she couldn't even testify as to anything or even argue, it seems to me that that would violate fundamental fairness. In addition, we are objecting to a new motion, a new motion that Sean filed to amend the order of distribution. So that's a new issue that was raised. We had objected on the basis that she was the legal spouse. The Supreme Court denied her petition for certiorari. And we asked Lee to amend the objection on the basis that now that it's been determined, we think she ought to be allowed to assert her claims as a putative spouse. It's essentially the same claim, that she is the proper heir. But it is, in fact, based upon a different legal theory, which was now clear, made clear by the U.S. Supreme Court's denial of cert. But. If that's the case, then why doesn't the two-year limitation on claims apply? Because the two-year limitation on claims is claims against the estate. And that is fundamentally at odds with probate section 5-3, which says the court can amend an order of distribution at any time during the administration of the estate. And the difference between an illegitimate child and a putative spouse. Other than age. They don't diminish the estate. That's why. And in connection, say, with respect to the limitations on payment of claims, section 8-12, I would note that the section on the probate doesn't require actions to establish liability of the decedent to the extent the estate is protected by liability insurance. So it's manifest to me that this section is really intended to preserve the assets of the estate. And it doesn't speak to who takes what the estate has. If I understand your argument, then logically it would seem to suggest that if Mr. McDonald was married to a woman who was his widow, that a putative spouse, who may have been married decades before, could bring a claim more than two years after the estate of the death of the decedent. Yes. So that theoretically there would be, and we could even enlarge this and suggest like the, I think it was a pilot captain in Italy someplace that supposedly had lives on both carry points. Or an abounder of DHL. Yeah. So your argument, if it's consistent, would suggest that a putative spouse, despite the fact that they aren't the actual legal spouse, could bring a claim more than two years after the death of the decedent. I would say that it's not time-barred. I'm not saying it's a good claim. No. I'm talking about a limitation. Right. But Section 5.3 specifically empowers the court at any time during the administration of the estate to amend or change or declare heirship. And if the estate's closed, it's too late. But this estate is not closed. And the issue here isn't really a surprise as to what the claim is, that she is the heir who's entitled to the entire estate. The issue is the legal theory. But it is a claim on the estate. I don't believe so, Your Honor. It's not a claim on the estate. It's a claim to what the estate has. It's not intended to diminish the estate. Is the two-year limitation, is it flexible? Is it jurisdictional? Judge, I don't think it's flexible. And I think it's jurisdictional for claims against the decedent's estate. She's not claiming that the estate owes her money as a creditor. And that's what Section 18-10, 518-10 of the Probate Act, which is cited in A6 of our brief addresses, those are all claims against the estate. Section 812, the limitations on payment of claims are claims against the estate. And that's the one in 812C, which says it's okay if it's after two years as long as there's insurance. I mean, that's an exception, 812C, 8123C. So what we're really talking about, the manifest, in our view, the manifest intent of the statute, is that anything that is intended to diminish the estate as a creditor must be brought within two years, unless it won't diminish the estate and there's liability insurance. But that doesn't address the issue that, because 18-12 can't overrule 5-3. I mean, you have to harmonize them with each other. And the local rules of the King County Circuit Court, Section 5-3 of the Probate Act, all of it allowed changes in order of heirship during the administration of the estate. And that's how I think those are harmonized. Is there any difference between actual notice, constructive notice, and good faith? You may answer. I don't know. I haven't thought about that. I think constructive notice, I think there is. I think there is, because I think if you're saying someone can't have a good faith belief, that really is looking at the subjective understanding of the party. Constructive notice doesn't take into account whether or not anybody would have had any good faith belief or understanding, or whether they could have even, though. What we're dealing with here, of course, is someone saying, based upon a legal theory, no one ever suggested applied. We say you couldn't have acted in good faith, even though we never thought of it either. And it seems to be so fundamentally unfair. What are you talking about? I thought she was told that because he was essentially a ward and he had a guardian, that he didn't have the ability to enter into a marriage contract? No, he wasn't told he didn't have the ability, Your Honor. What Mr. Skyfo said is, it could be voided. It could be voided. And could be voided, I think, raises the issue of, okay, what does it mean to void? And if you void the marriage, you have to file a lawsuit. And the case law is pretty clear that unless and until an order is entered disallowing or disapproving the marriage, that marriage is valid. And as one thing, people say, oh, he could sue you. That doesn't mean he wins. John McDonald understood the nature, obligations of marriage at the time of the marriage. The phrase could be voided relates to a third party's action. Would that be a fair statement? Yes, it does. It does. Well, if the action of a third party does or doesn't occur, doesn't necessarily mean that if it doesn't occur, that the other spouse was competent. You know, it's the old argument, if a tree falls in a forest and it doesn't make a sound, did it really fall? And the point is, the fact that it could be voided doesn't necessarily mean that it's legitimate, if you follow what I'm saying. It's whether or not there's an enforcement of the illegitimacy. But our argument, as I think I tried to make clear, is that to invalidate a marriage, at least under the laws that existed in 2017, Sean would have had to have filed a complaint. He would have had to approve under this Court's decision. That isn't the issue here. It's not whether or not the marriage was legal or not. The question is whether or not she had essential notice or constructive notice in order to be of good faith that she was entering into a contract that was enforceable. Well, and this, and I understand my time is up, but if I could answer this with this. Guess why in the putative spouse statute, the issue of good faith and who bears the burden and what you need to show, bad faith is so important. And we didn't have a chance to address that issue. Because the only case that we've cited by a state court or a highest court is Williams v. Williams, who says in the putative spouse statute the presumption is that everything is in favor of the marriage, just consistent with this Court's decision, Larson v. Larson. And any doubts are resolved in favor of the marriage. The burden of proof is on the party objecting to the marriage, to the putative spouse status, not on the party who is the putative spouse. It's different than it would otherwise be. So I think the problem is, and that's why this decision, there's no decision on this in Illinois, but if it's going to be consistent. Williams is a Nevada case. Pardon me? Williams is a Nevada case, isn't it? It is. It is a Nevada case. But it construes the same statute that Illinois has. It is a, I believe it's a uniform statute. You'll see that if you look at the decision, it has the same language in it. There's a Minnesota, follows that. It's really the putative spouse statutes throughout the country are pretty uniform. They all talk about cohabitation. They all talk about, I mean, and so construing the same language, essentially the same language, the burden should be on the party who's objecting. And because, and if someone says, hey, wait a minute, you can't get married because someone may later file to object to it, that means you can't act in good faith or you should know that you're not going to be married. No. I think the thing is that when you get married, you are presumed to be married until someone says you're not. Yes, sir? With respect to who has the burden, just by presenting Ellicett's understanding, after speaking to John's, to counsel, that this marriage may be voided, isn't that a prima facie case of a lack of good faith? I don't think so, Judge, because. Why not? Because what he says is they may try to invalidate it. Right, right. Well, that's like saying someone may sue you, but then don't you have to, look, does John understand the nature and effect responsibilities of marriage? He did. The record established below is that he did. Mr. Bement, they know each other, Ellicett and John, from their time at the University of Illinois. Mr. Bement was a clinical psychologist who talked to them about the obligations of marriage at that time in their 50s and their life. So just like in Larson, in Larson the challenge is that the wife was not competent to marry. And this court said, you can't just say that. And that spouse, I think, was institutionalized. The court said, you've got to prove at the time they got married that she didn't understand that. And that's just because someone says they may try to invalidate it. That means if you got married, it's voidable. Not voided, voidable. And under prevailing decisions by the Illinois Supreme Court, a voidable marriage is valid unless and until there's a proceeding brought to invalidate it and you reach judgment. And so ‑‑ I realize it's not the holding of the court, but Justice Tice says void, doesn't she? I don't believe Justice ‑‑ you mean Justice ‑‑ Tice in McDonald. You mean Justice Burke? No, I mean Justice Tice in the dissent. Well, my point is we're not ‑‑ she wasn't dealing with the period of starvation. No, I understand. You just said voidable, though. But I don't think they were ruling the Barber case. But I think when you look at, again, if you're looking at the good faith in 2017, at the time that the marriage was celebrated, you have to look at what the law is, what she could have found, rather than, you know, and as Williams versus Williams says, that the information that you have to get, and perhaps this will address, Justice McClaren, your issue, the information has to be certain and authoritative. The impediment has to be certain and authoritative. The fact that somebody could say we're going to do something to you isn't certain and authoritative. You know, the fact that someone says the spouse may be married isn't certain and authoritative, but when the spouse admits he's married or the other spouse comes forward, that's certain and authoritative information that can vitiate good faith. But the question is, if everybody could say, wait a minute, you are a ward, you're getting married, the father or whoever the guardian is doesn't go through this long, involved process that the Supreme Court now says everybody has to go through, they get married, everybody agrees to it, but it's no longer valid. And you're going to say, well, because somebody could have objected to it, therefore that person doesn't have the status of a spouse until she learns that she no longer is the legal spouse. I think it's fundamentally unfair. It's not only unfair to Elizette, it's unfair to every person who had gotten married since this statute was amended in 2014 without going through this long and involved proceeding that would require the court to determine by clearly convincing evidence. I mean, it was never intended, in my view, to address this, but the Supreme Court said so. So, I mean, they said so. I can't change that. But in terms of whether or not people who get married based upon what they understood at the time, not that it was certain and authoritative, no one told Elizette, no one suggested that Mr. Skyfo was not only, not her attorney, but Johnson, no one suggests Mr. Skyfo says, do not get married because it will definitely be void. They didn't say that. They said it could be void, could be. No one said, you know, that just means John may, Sean may attack. No one says, you can't do it. It says, I don't think you should because he could try to repeal it. And if you're repeating your prior arguments. Okay, well, I don't mean to. Any other questions? Thank you, Your Honor, for your attention. We'll have an opportunity to make rebuttal. Mr. Storm. Good morning, Your Honor. May it please the court. Counsel. My name is Peter Storm. I represent Sean McDowell, the administrator of his brother's estate. We think first and foremost this morning ought to be about finality. And this is an appeal from Judge Villa's order, which hopefully ended a very long process with a very difficult situation for Sean as the administrator. I think one of the keys to Judge Villa's ruling, they spend a lot of ink talking about SHIFO's testimony. But if you look carefully at Judge Villa's order, part of what he based his ruling on was Ilizette's admission in her deposition that she had knowledge that her marriage might be invalid. And to your point, Your Honor, I believe that there is not a day that will ever come in these proceedings. Even if they were to have another evidentiary hearing or yet another attempt to try to establish a good faith belief, that admission prevents her from ever being able to competently prove that she lacked knowledge of the potential invalidity of her marriage. My question was whether or not just that deposition testimony alone is enough to establish a prima facie case of lack of good faith. And your position is it is. Is that enough? Yes, but it's not just a lack of a prima facie case. It's a binding admission by her that she has knowledge of the potential invalidity of the marriage. Shouldn't she be allowed to explain that with that knowledge she still believed that they could go forward and explain why in an evidentiary hearing? I don't think so, because the court got this case in the context of the Supreme Court's ruling and now a petition that she files in the wake of that to say I had a good faith belief. One of the other things that would bear on that prima facie case is what we've talked about as the burden of proof. But here, the marriage, and unlike the Nevada cases, which are all of those cases are about bigamous marriages where one or both of the parties, as in the Nevada case, reasonably believed that they were married and that the prior marriage had been terminated. When that impediment was removed in those cases, then that no longer existed and the court is honoring the good faith belief they had that the marriage was valid. That's completely different from the situation we find ourselves in here this morning. The Supreme Court clearly said that this marriage was invalid at the time of the marriage ceremony and she then filed her petition after this matter came back to the trial court and says I can establish a good faith belief. There are findings of fact by the Supreme Court, and I quarrel with the idea that the doctrine of the law of the case doesn't include facts that are key to the determination. The Supreme Court spends a lot of time talking about a number of issues that bear on the validity of the marriage, not the least of which are some, what I would characterize to be almost borderline fraudulent activities, evading court orders, not being forthcoming with regard to her identity, which ultimately resulted in some of the motions eliminated. The reason that some of that happened, as I read the record before Judge Murphy, is because she didn't comply with court orders. So you don't comply with court orders, you get barred from testifying, and then you complain that if I could just testify, I could present some additional evidence that bears on the very subject that we're here about today. And you're right, there wasn't an alternative pleading, but I think Judge Villa very correctly realized that there is no chance, there's not ever going to be a day in this case in which she could establish that good faith belief, at least with respect to guardianship issues. Counsel, let me interrupt. Sure. In the Williams case, were the punitive spouses ever apprised by anyone that the prior marriage or that there was a marriage that they weren't aware of existed? I don't believe so. Essentially what I'm looking at is whether or not there was any constructive notice, anything that would be a basis upon which the punitive spouse would have any doubts as to the legitimacy of marriage. No, and I think that the court actually says that when it says, hey, neither one of them, they both had a reasonable belief that they were married. And to your point, with regard to guardianship, there was some discussion about public policy, but one of the key things undergirding the public policy in the guardianship statute is that once there is an adjudication of disability and once there is an appointment of a guardian, that guardian has the power to contract on behalf of the ward. The ward does not have it. And if the ward does enter into a contract in the wake of the adjudication and the appointment of a guardian, it's void. The guardianship statute says that. And the reason for that is that there's a public policy of protecting wards, disabled people, from being taken advantage of, from entering into contracts that they don't have the mental state in order to enter into. And I realize that they've made the argument that the Divorce Act somehow trumps that and that that's read out of the Guardianship Act. But the facts are that you can't enter into a contract on behalf of a ward once a guardianship is established. And if you have a good-faith belief that your marriage is valid, how could you possibly have that and have a guardianship? You know that there's a guardianship proceeding ongoing. You know that there has been a guardian appointed for the ward. You know that Mr. Schieffo has been appointed as the attorney for the ward. The very attorney who is representing the ward tells Ilizet that he doesn't believe that the marriage is valid, or at least there is a probability that it could be invalid. The decision to proceed at that point is not a decision to proceed in good faith. It's a decision to proceed irrespective of the consequences. And Judge Villa, I believe, correctly recognized that that circumstance is fatal to a claim that she had, from that point forward, a good-faith belief that she was married. Newlyweds celebrate their marriages. They don't hide them. They don't fail them. Did the punitive spouse say something to the effect that there is law in other states that refute what he said relative to validity or voidness? I'm sorry. I don't naturally understand your question, Your Honor. Well, my recollection was she made statements that suggested that she believed that what legal advice was being given wasn't consistent throughout the 50 states. And that was a rationale for why she didn't feel like she couldn't go through or she was prevented from going through with the marriage. I'm not aware of that testimony. Okay. And what she said in her deposition, which is part of the record and is what Judge Villa based his ruling on, is were you aware, she's being asked if you were aware of the advice that Mr. Schifo told you that you could not enter into a marital relationship with John McDonnell while he was a ward of the court. Answer, not me specifically. Mr. O'Kelly, objection asked and answered by Mr. Connell. Were you aware of the advice? Did he make it known to John McDonnell that John could not enter into a valid marriage when he was a ward of the court? Yes or no? That's not my understanding. I'm not talking about what he said to her. I'm talking about what she said to him in response or reply, which was something to the effect that there's other case law and other jurisdictions that say that you aren't right or that we can marry. I'm not aware of that. Okay. And even were that to be the case, we now have a situation in which she has knowledge of the potential invalidity. The fact that you might be able to construct an argument to somehow save what is otherwise an invalid marriage, I don't believe translates into a good faith belief. And one of the cases that we've cited to the court, the Daniels versus Retirement Board of Policemen's Annuity and Beneficial Fund, you know, does construe the punitive spouse statute, and it makes very clear that the rights of a punitive spouse are limited, this is a quote from the case, limited to the period in which the party had no knowledge of the invalidity of the marriage. She has some knowledge of the invalidity of the marriage, and she has that immediately upon having the discussion with Attorney Schifo. And she knows also that there is a guardianship proceeding and that both the guardianship court, Judge Murphy, and the guardian are duty charged with acting in the best interest of the ward. That's what this is about is the best interest of the ward. Not the best interest of people who might like to try to take financial advantage of a disabled person. And we would ask the court to affirm Judge Villa's ruling and to end these proceedings here. Did you ever say anything about the two-year statute of limitations? I did not talk about the pointing. I haven't. That was raised in the briefs. I do believe that it has to be a claim against the estate. The notion that it isn't diminishing the estate is every day of the moment, right when we're standing here right now, this estate is being diminished. That's why it's important to have finality. That's why the Probate Act has those limitations. There are limitations on challenging wills. There are limitations on when you can present things. And if you could simply wait until it's convenient to do it just because the matter is still pending, it seems like we would never have an end to that. According to their theory, she could have not filed this up until now. And simply because we haven't closed the estate yet, she would be able to file that claim today and say, oh, well, the relevant period of time is back before the Supreme Court made its ruling. We have to have some finality here. And that's what that claim statute is. I don't know what else to say that that is if it's not a claim against the estate. It's the claim that I am the heir and everything ought to go to me. You don't think that 5-3 sub a is an exception? The statute that allows the trial court to amend your heirship. Well, that's amending the heirship because it has some information that it gets that might require that. That's different than making a claim that I am the sole heir and different than what I claimed before. I claimed that I was the sole heir because there was a valid marriage. Now, when there is no valid marriage, my new claim is that against the estate is that I am the putative spouse. And the only other thing I would say is that with regard to burdens of proof, doesn't the fact that you are the putative spouse affirm that the marriage is invalid? Otherwise, you wouldn't need to be a putative spouse. If the marriage is legal, if it's presumed to be valid, then there would be no reason to have a putative spouse statute. By very definition, the putative spouse, and that's why it talks about having to provide or to prove a good faith belief, I think by its very nature requires the putative spouse to prove the good faith. I would ask that you affirm Judge Zillow's ruling. Thank you very much. Any other questions? Thank you, sir. Mr. Roeder, you may proceed. Thank you, Your Honor. First, counsel talked about the inability of the ward to enter into a contract. Under the Probate Act, the contract can be on and into. The guardian has the right to affirm or not affirm it. But nonetheless, the party entering into that contract is bound. So I'm not sure how that applies to the marriage context, but we cited that in our brief. They raised that argument, but Elizette would be bound. She would be his lawful wife under that theory. The findings of fact by the Supreme Court, I just don't believe the Supreme Court is a fact-finding court in terms of hearing evidence, especially if it doesn't say it's making a finding of fact, and especially if the finding or the statement wasn't presented to the trial court for decision or even briefed. And that is the truth here. None of these things that they are referring to in the Supreme Court were even briefed. They're not briefed in the briefs before the Supreme Court. They weren't briefed before this court when we were here last, and they were not presented as part of the decision that was entered. So if we were to agree with you, how would we handle that fact-finding by the Supreme Court? Well, I think what you would say is consistent with the Ray Kane County Collector, that there is no binding facts under a law-of-the-case doctrine. The trial court has to either find them again, has to hear evidence. Like any other court, though, the Supreme Court and this court has the ability to infer from the record what the facts are. Correct, but it seems to me that your Honor is in some— We're bound by those findings by the Supreme Court. But it seems to me that this court and the Supreme Court, that would apply only to facts that were submitted to the trial court for decision. Otherwise— Well, we're looking at the entire record, and the Supreme Court infers from the record certain facts. Unless there's something new to add to the mix, to the record, we're bound by the findings of the court. Well, I couldn't find a case that says that. I could not find a case that says— Well, I'm interpreting our Supreme Court rules. Okay. And I thought that the Kane County Collector said, but I understand, you understand our position. I was on this case, so I'm familiar with the facts of the case and the exchange that my colleagues and I went through. There's nothing new here. Okay, well, with respect to counsel's argument that Elizette was barred from testifying because of violations of the court order, that's just not true. She was barred because of an erroneous ruling on the Dead Man's Act. That's what this court ruled. That's what the Supreme Court ruled. And I think that the way that all parties in interest here can know whether or not the good faith of the putative spouse should be judged is whether or not there is some kind of notice, knowledge, whatever. It's whether the impediment is disclosed by certain and authoritative knowledge. Because that way you know it's not someone says, hey, wait a minute, he may try and invalidate it. What's the authority for that proposition?  Williams v. Williams. And no case in Illinois has determined what the standard should be. But Williams v. Williams cites cases that talk about how if it's going to be noticed, that would impart knowledge or would vitiate good faith is the language. Williams v. Williams is. It has to be certain and authoritative. And the opinion of a lawyer, the lawyer for the ward. I don't think it was certain and authoritative here. You can even look. He said there's a provision in the act that says if you marry someone, it's voidable as a matter. There's no such provision in the Marriage Act. And he's not even her lawyer. You know, if some lawyer tells somebody something and then you say, well, he told me this, but I did X. At least there has to be an analysis of whether or not what the lawyer said is accurate. And it's just not accurate here. Your end. I mean, presumes that lawyers are truthful with their clients. Another point to that for which you may or may not be able to infer based upon what some lawyers say. Normally in appellate review, when the trial court has different factual evidentiary proofs. But the trial court in favor of one party over the other. Doesn't make findings and facts and especially doesn't make conclusions of law. We, courts of review, are supposed to take whatever facts that is contained in the record that will support the judgment to be taken as true or established. So when you had your colloquy with Justice Burkett, I don't know that the Supreme Court was making factual findings. It was concluding what facts would be in favor of supporting the judgment and adopting those based upon prior case law. So to the extent that they were making findings of fact, I don't agree with the specific statement. I will agree with the statement that they took into consideration and deliberated upon those facts which were in the record that supported the judgment. And we are forced to do the same thing. Well, I certainly understand. And I would just approach as a lawyer the idea that if you want a fact to be something which is properly submitted to the court, it should be part of what the trial court has considered. And it seems unfair to me that if there's something that's in the record that wasn't part of the decision appealed from, it really ought not to be considered. But that's my view. But if there are no other questions I would ask, Judge, for the reasons that we've stated, I would request that you reverse and remand at the least with instructions that there be a hearing to determine these things. But we think it's clear that since the determination of illegality was based upon something nobody even considered in 2017, there couldn't be a determination that she acted in bad faith. So that's the right answer. Thank you for your attention. Thank you. We'll take the case under advisement. There are no further cases on the call. Court is adjourned.